## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bil MacLeslie,                                              Case No.: _____

Plaintiff,

vs.                                                          **COMPLAINT**

The Zephyr Theatre, a d/b/a of Only A Dim
Image Productions, Inc.; Calyssa Hall;
Nicole Bartelt; Robin Anthony; Alexander
Eder; James Hanke; Rachael Harvey; Anissa
Raleigh; and Annette Sallman,

Defendants.

COME NOW, Plaintiff Bil MacLeslie ("Plaintiff") as and for his Complaint against
Defendants The Zephyr Theatre, a d/b/a of Only A Dim Image Productions, Inc.; Calyssa
Hall; Nicole Bartelt; Robin Anthony; Alexander Eder; James Hanke; Rachael Harvey; Anissa
Raleigh; and Annette Sallman (collectively, "Defendants"), states and allege as follows:

### <u>INTRODUCTION</u>

1.      This action arises from Defendants' collective and illegal actions using their
corporation to engage in illegal acts, including among other things: Civil RICO in violation
of 18 U.S.C. § 1964, fraud, negligent misrepresentation, breach of contract, breach of
fiduciary duty, criminal conversion, unjust enrichment, civil theft, and violation of
Minnesota employment laws.

2.      Plaintiff is a former employee of The Zephyr Theatre (the "Zephyr"), a d/b/a
of Only A Dim Image Production, a Minnesota nonprofit corporation organized under
Minn. Stat. § 317A.   During his employment, Plaintiff, along with other employees,

discovered a range of fraudulent activities and financial mismanagement by the corporation, including by Calyssa Hall, the President of the Zephyr. Such fraudulent activities and financial mismanagement were facilitated and/or willfully ignored by the Board of Trustees, including Defendants Nicole Bartelt; Robin Anthony; Alexander Eder; James Hanke; Rachael Harvey; Anissa Raleigh; and Annette Sallman (collectively the "Board" or the "Board of Trustees").

3.     Plaintiff's reports of the fraudulent activities and financial mismanagement were ignored, and, the Board of Trustees, by and through Executive Director Calyssa Hall, retaliated against Plaintiff by, among other things, forcibly terminating his employment and refusing to pay Plaintiff for actual wages, commissions, or other compensation rightfully earned.

4.     The Defendants have not acted honestly, nor have they treated Plaintiff fairly or reasonably during his time of employment. Indeed, Calyssa Hall, with the assistance of the Board of Trustees and others at the Zephyr Theatre, orchestrated a strategy to personally enrich Hall and her family at the expense of the corporation and its donors, fraudulently solicit donations despite being notified by the Minnesota Attorney General's Office that it was not allowed to do so, and engineered Plaintiff's wrongful termination in violation of his reasonable expectation of continued employment.

## PARTIES

5.     Plaintiff Bil MacLeslie is a citizen of and resides in the State of Minnesota.

6.     Only A Dim Image Productions, Inc. is a Minnesota nonprofit corporation organized under Minn. Stat. § 317A, with its registered office address as 601 Main Street

North, Stillwater, Minnesota, 55082.  Only A Dim Image Productions, Inc. does business in Washington County, Minnesota, as "The Zephyr Theatre."  This Complaint will reference Defendant Only A Dim Image Productions, Inc. as the "Zephyr."

7.     Calyssa Hall is the former President, Executive Director, and Artistic Director of the Zephyr Theatre.  Hall is a citizen of the State of Minnesota and is a resident of Washington County, Minnesota.

8.     Nicole Bartelt is the Chair of the Zephyr's Board of Trustees.  Bartelt is a citizen of the State of Minnesota and is a resident of Washington County, Minnesota.

9.     Robin Anthony is the Vice Chair of the Zephyr's Board of Trustees.  Anthony is a citizen of the State of Minnesota and is a resident of Washington County, Minnesota.

10.     Alexander Eder is the Secretary of the Zephyr Theatre's Board of Trustees.  Eder is a citizen of the State of Minnesota and is a resident of Washington County, Minnesota.

11.     James Hanke is the Treasurer of the Zephyr Theatre's Board of Trustees.  Hanke is a citizen of the State of Minnesota and, as the Treasurer of the Zephyr Theatre, conducts business in Washington County, Minnesota.

12.     Rachael Harvey is a member of the Zephyr Theatre's Board of Trustees.  Harvey is a citizen of the State of Minnesota and is a resident of Washington County, Minnesota.

13.     Anissa Raleigh is a member of the Zephyr Theatre's Board of Trustees.  Raleigh is a citizen of the State of Minnesota and is a resident of Washington County, Minnesota.

14.     Annette Sallman is a member of the Zephyr Theatre's Board of Trustees. Sallman is a citizen of the State of Minnesota and is a resident of Washington County, Minnesota.

## JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction over Count I against the Defendants pursuant to 28 U.S.C. § 1331, because the claim arises under federal law.

16.     This Court has supplemental jurisdiction over all remaining Counts pursuant to 28 U.S.C. § 1367, because joinder is required, and the Counts are so related to Count I that they form the same case or controversy.

17.     This Court has personal jurisdiction over the Defendants because they are residents of this District, because they have committed acts causing injury to Plaintiff in this District, and because the underlying agreements and actions supporting the allegations in this Complaint occurred in this District.

18.     Venue is properly established in this District pursuant to 28 U.S.C. § 1390(b) because the Defendants reside in this District and/or a substantial part of the events or omissions giving rise to this lawsuit occurred in this District.

## GENERAL ALLEGATIONS

***The Board of Trustees Illegally Agrees to Give Power Over the Corporation to the Hall Family***

19.     The Zephyr Theatre is a Minnesota nonprofit corporation organized under Minn. Stat. § 317A, with the stated purpose of providing arts and education opportunities in Washington County, Minnesota and surrounding communities.

20.     The Zephyr Theatre was originally founded in 2013 as "Only A Dim Image Dessert Theatre" by Defendant Hall with the financial and practical assistance of her parents, Franz Hall and Carol Hall.  At the time, the company was a for-profit company which financial profits were for the benefit of Hall.

21.     In 2016, Hall reincorporated the corporation as a nonprofit corporation, "Only A Dim Image Productions."  At the moment of the incorporation as a nonprofit, all oversight and responsibility of the corporation was put into the Board of Trustees.

22.     According to Minn. Stat. § 317A, Subd. 6, as a nonprofit organization, the Zephyr Theatre was prohibited from being "formed for a purpose involving pecuniary gain to its members, other than to members that are nonprofit organizations or subdivisions, units, or agencies of the United States or a state or local government," and from paying "dividends or other pecuniary remuneration, directly or indirectly, to its members, other than to members that are nonprofit organizations or subdivisions, units, or agencies of the United States or a state or local government."

23.     At the time of the inception of the Zephyr Theatre as a nonprofit organization, the Board of Trustees wrongfully and illegally conferred authority for the nonprofit onto Hall.  This included agreements, either directly or indirectly, by the Board of Trustees to run the corporation based on the wishes and directions of Hall.  These agreements and actions by the Board of Trustees is a direct violation of the responsibilities conferred on Board of Trustee members under Minn. Stat. § 317A.  The Board of Trustees masked their agreements by naming Hall as the Executive Director of the corporation.

24.     As part of their agreements with Hall, the Board of Trustees agreed to operate the Zephyr Theatre for the purpose of conferring pecuniary gain onto Hall, her parents Franz and Carol, and other members of the Hall family.

25.     In addition to naming Hall as Executive Director and giving her power over the Board of Trustees in violation of Minn. Stat. § 317A, the Board of Trustees gave managerial and executive positions to Hall's parents, Franz and Carol, and Hall's sister, Cassidy.

***Fraudulent Misrepresentations During the 2018 Capital Campaign***

26.     In or around 2018, the Board of Trustees gave Hall responsibility for organizing a capital campaign to raise funds to purchase the old Stillwater Train Depot located at 601 Main Street N., Stillwater, Minnesota (the "Depot Building").  The capital campaign made multiple promises to donors, including, among others, that the capital call would only be made when the Zephyr Theatre received $1,000,000 in campaign pledges.

27.     The capital campaign solicitations raised less than $1,000,000 in campaign pledges.

28.     Despite the fact that the capital call garnered less than $1,000,000, Hall – on behalf of the Board of Trustees – told donors that the capital campaign had met its goal and made a call on all existing campaign pledges.

29.     The representation to donors that the capital campaign had met its goal was a false and fraudulent statement made with the intent to collect pledges from donors despite the fact that the Zephyr Theatre did not meet its $1,000,000 capital campaign goal.

30.     Based upon the misrepresentation by Hall and the Board of Trustees, multiple donors gave their money to the Zephyr Theatre.

31.     As a result of the donations received from their misrepresentations, the Zephyr Theatre obtained a mortgage from Lake Elmo Bank to purchase the Depot Building.

***Failure of the Board of Trustees to Properly Manage the Corporation***

32.     Following the purchase of the Depot Building, the Board of Trustees did not responsibly manage the Depot Building.  Instead, the Board of Trustees gave full authority regarding the management of the Depot Building to Hall and her parents.

33.     In addition, the Board of Trustees did not responsibly manage the operations of the corporation.  Instead, the Board of Trustees gave full authority regarding the day-to-day management of the corporation to Hall.

34.     Upon information and belief, Hall, with the approval of the Board of Trustees, gave herself a salary worth over $60,000.

35.     In addition, Hall, with the approval of the Board of Trustees, gave her father, mother, and sister salaries of more than $20,000 each.

36.     The Board of Trustees blindly approved these salaries because, as part of the Board of Trustees' agreement to give full control of the corporation to Hall, the Board of Trustees refused to question any acts or operations of Hall or her parents.

37.     As a result, the Board of Trustees, directly or indirectly, was operating as an arm of the Hall family and thus operating the organization for the purpose of illegally conferring pecuniary gain on the Hall family.

38.     The Board of Trustees deliberately allowed Hall to hold the positions of Executive Director, Chief Financial Officer, and Director of Human Resources.  As a result, Hall was the sole person responsible for tracking financial information.  The Board of Trustees did not allow any other staff person to have insight into the management of the financials of the corporation.

39.     The Board of Trustees does not have a Separation of Roles Policy.  In addition, there is no Donor Privacy Policy, Solicitation Practices Policy, Financial Agreements Policy, Restricted Fund Policy, or any mechanism to ensure financial transparency to the public.

40.     The Board of Trustees deliberately chose to have no fiduciary oversight over Hall's actions.

41.     The Board of Trustees has no self-review process nor any mechanism by which to hold Board members accountable for mismanagement or malfeasance.

42.     The Board of Trustees wrongfully allowed Hall to execute the purchase of the Depot Building, despite not having sufficient funds and not fulfilling the promise made to donors that the purchase would only be made when the capital campaign reached $1,000,000 in donations.

43.     Throughout 2019, there were growing financial concerns within the organization, caused at least in part by the financial mismanagement of the Board of Trustees and Hall.

44.     These concerns continued to escalate in 2020 and 2021.

***The Board of Trustees Allowed Hall to Operate a Hostile Work Environment***

45.     In addition to the financial abdication of duty by the Board of Trustees, the Board of Trustees operated a hostile work environment.

46.     Bil MacLeslie was hired as Managing Director in or around 2021.  Prior to being hired, MacLeslie was a volunteer at the Zephyr Theatre for many years.  MacLeslie was hired by Hall, on behalf of and with authority of the Board of Trustees.  The Board of Trustees personally guaranteed payments under the agreement with MacLeslie.  The Zephyr Theatre promised to employ MacLeslie so long as MacLeslie performed his job responsibly and did not give the Zephyr Theatre cause to terminate him.

47.     Plaintiff was induced to accept his position in the Zephyr Theatre based on multiple promises of Hall and the Board of Trustees, including promises that the company was financially sound, had effective financial controls in place to prevent mismanagement, and that the Board of Trustees and Hall would operate in the best interests of the company and its donors.

48.     Unbeknownst to Plaintiff, those representations by the Board of Trustees and Hall were false.

49.     Plaintiff provided loyal, effective and highly valuable services, during which time Plaintiff successfully generated a significant amount of donations and other positive benefits for the Zephyr Theatre.

50.     Despite his successes, Plaintiff also began noticing a number of issues with the Zephyr Theatre.

9

51.     For example, the Board of Trustees deliberately operated as a "hands-off" Board, with little to no knowledge of the day-to-day management issues or financial status of the corporation.  This "hands-off" approach was a deliberate result of the Board of Trustees abdicating their duties under Minn. Stat. § 317A and instead illegally dedicating all power in the corporation to Hall and her family.

***Financial Fraud And Mismanagement***

52.     According to the Minnesota Attorney General's Office, the Zephyr Theatre failed to file required reports sufficient to maintain its status as a nonprofit corporation in 2020.  Thus, beginning on or around November 16, 2020, the Zephyr Theatre was not allowed to solicit donations and hold itself out as a nonprofit.

53.     The failure to file the required reports was due to Hall's mismanagement of the corporation and the Board of Trustees' willingness to ignore issues caused by Hall's mismanaging due to the Board's agreement to operate the Zephyr Theatre for the pecuniary gain of Hall and her family.

54.     The Zephyr Theatre also missed the required deadline to file the required reports in 2021.  That deadline passed on or around October 25, 2021.

55.     The Zephyr Theatre did not submit a Form 990 for 2020, 2021, or 2022.

56.     When surpassing the $25,000 donated income threshold, the Zephyr Theatre did not complete the Charitable Solicitation Registration as required by law.  In addition, Hall stated that neither she nor the Board of Directors intended to complete the registration. Such statements were made by Hall as recently as August 2022.

57.     Thus, from November 16, 2020, the Zephyr Theatre was not permitted to solicit donations or tell potential donors that their donations were tax exempt.

58.     Despite this, Defendants continued to solicit donations in violation of Minnesota law.

59.     Defendants made false statements to Plaintiff and other donors indicating that the Zephyr Theatre was legally allowed to solicit and accept donations and that such donations were tax exempt.  These false statements were made with the intent to induce Plaintiff and others to continue working for the Zephyr Theatre and to solicit donors to make donations to the Zephyr Theatre.

60.     In addition, upon information and belief, the Zephyr Theatre does not use restricted funds earned from donations for the purposes for which such funds are dedicated. For example, foundation grant awards are not set aside and earmarked for specified programming.  Multiple education-specific grants were not used by the Zephyr Theatre for specified purposes.

61.     There are additional examples of restricted funds not being used properly, including the green room renovation, the little library, the piano, and the Train Trax Snacks renovation.  In each of those instances, money was not properly allocated for the purpose for which it was donated.

62.     The failure of the Zephyr Theatre to use earmarked funds for their specified purposes is due to Hall and the Board of Trustees' mismanagement.

63.     As a result of Hall's mismanagement, with the assistance of the Board of Trustees, Hall has requested and actually borrowed loans from employees of the Zephyr Theatre.

64.     Upon information and belief, Hall hid the existence and/or extent of these loans by deliberately falsifying financial information of the corporation.

65.     Upon information and belief, at least four employees are known to have been approached and provided loans.

66.     Upon information and belief, Hall has falsified multiple financial documents filed with federal and state authorities in a deliberate and fraudulent misrepresentation of the corporation's financial status.

67.     Upon information and belief, Hall submitted falsified grant income information in relation to the 2021 financials.

68.     The Zephyr Theatre's financial status has suffered multiple other setbacks as a result of Hall's and the Board of Trustees' mismanagement.

69.     The Zephyr Theatre has deliberately failed to pay Minnesota sales tax for liquor sales.

70.     The Zephyr Theatre has deliberately failed to pay artists with which it has contracted, including professional artists who are members of Actors' Equity Association.

71.     The Zephyr Theatre has deliberately failed to pay educational instructors. For example, Reed Sigmund, the person responsible for hiring educational instructors, has falsely represented to potential instructors that they will receive guaranteed pay while knowing that such instructors would not receive such pay.  These statements by Sigmund,

12

made with knowledge of and on behalf of the Zephyr Theatre, are deliberately false statements made with the intent of obtaining the services of high-quality educators, and such educators relied on the statements in agreeing to perform their services for the Zephyr Theatre.

72.     The Zephyr Theatre has deliberately failed to pay vendors and contractors which have outstanding bills and requests that are ignored.  The Board of Trustees have personally guaranteed that these payments would be made.

73.     Upon information and belief, the lack of organization and deliberate financial mismanagement has allowed Hall and her family to reap financial rewards at the expense of unpaid artists, educators, and others.  For example, upon information and belief, Hall's family, including parents Franz and Carol, have received thousands of dollars in payment without being required to submit verified invoices for the purported work which the payments were for.  Because Hall was responsible for approving such payments, she did so for her parents without verifying whether any work was actually done.

74.     Hall would also reimburse herself for work done for which she was already paid for by her salary.  For example, while assisting with educational programs is a responsibility of the Executive Director, Hall paid herself at least $9,000 for such work in 2022 despite the fact that she already received a salary as Executive Director.  These illegal reimbursements were made with the knowledge of the Board of Trustees and harmed Plaintiff and other employees.  The full extent of these illegal reimbursements is not yet known.

75.     The Board of Trustees knew about these practices but failed to stop it because of the agreement by the Board of Trustees to run the Zephyr Theatre for the pecuniary gain of Hall and her family.

76.     In or around July 2022, the Board of Trustees hired Valley Vision LLC as a strategic planning consultant and tasked Valley Vision LLC to draft a strategic plan for the organization.  Valley Vision LLC is owned and operated by Adriane Lepage, the wife of Chris Lepage, who was, as of July 2022, the treasurer of the Zephyr Theatre Board of Trustees.

77.     As part of the process of Valley Vision LLC's creation of a strategic plan, interviews were conducted with employees.  During this process, Valley Vision LLC uncovered a myriad of problems with the organization, including financial mismanagement and poor Board of Trustees oversight.  In a report submitted to the Board of Trustees on September 19, 2022, Valley Vision LLC made the following findings:

   a. "Significant financial mismanagement by the Executive Director, with potential legal implications;"

   b. "Possible charity fraud;"

   c. "Unpaid staff expenses in tens of thousands of dollars;"

   d. "Staff unable to cash last three to four paychecks;"

   e. "[V]endors unpaid;"

   f. "Financial data and reporting is inconsistent or inaccurate;"

   g. "Ineffective organizational leadership by the Executive Director;"

   h. "Fostering and maintaining a toxic work environment and workplace culture."

78.   Perhaps the most important finding was that the Executive Director was "[m]aking decisions not in line with the mission or purpose of the organization."

79.   As a result of its findings, Valley Vision LLC determined that it could not make a strategic plan and recommended changes, including removing Hall as the Executive Director.

80.   Valley Vision LLC also noted that "[t]he board of directors [sic] may be financially liable if the financial mismanagement proves to be accurate."

81.   Rather than take action based on Valley Vision LLC's findings, the Board of Trustees attempted to cover up the findings and prevent the reality of the Zephyr Theatre's status – and the Board's own wrongdoing – from coming to light.

82.   Among other actions, Hall, with the approval of the Board of Trustees, wrongfully terminated Plaintiff and other employees who had reported issues of mismanagement to Valley Vision LLC and the Board.

83.   Upon information and belief, the true state of the Zephyr Theatre's financial status was deliberately hidden from presentations to foundations, employees, and other donors in an attempt to obtain more services and money.

84.   In addition, Hall and the Board of Trustees have failed to make federal and state payroll tax payments since April 2022.

85.   Donors and employees, including Plaintiff, were misled by Defendants' false statements and did act upon them by, among other things, continuing to work for the Zephyr Theatre and giving donations to the Zephyr Theatre.

86.     Even after the wrongful termination of Plaintiff and others, the Zephyr Theatre – with the support of Hall, who continues to work cooperatively with the Board – and the Board members themselves, engaged in additional fraudulent misrepresentations to the public.

87.     For example, Defendants have explicitly solicited donations from the community on the basis that donations would be used in the first instance to pay employees – like Plaintiff – wages which they have already owed.

88.     Defendants have publicly stated that paying its employees is its "number one priority" and that its "first order of business is to make the employees whole."

89.     In a December 31, 2022 solicitation post on its website and on social media, Defendants solicited donations from the community based on the unequivocal promise that "support the Zephyr Theatre receives from the community will be prioritized to ensure we can pay the staff for the work they have provided as soon as possible."

90.     The statements from Defendants that they would use donations from the community to prioritize payments owed to Plaintiff and other employees were false, and Defendants made them deliberately with the intent of inducing the public to make donations and commit time and energy to the Zephyr Theatre's efforts – efforts which, as alleged herein, were for unlawful purposes.

91.     Defendants have not prioritized payments to employees nor did they intend to when their false and fraudulent statements were made.

***Plaintiff Was Wrongfully Terminated and Has Not Been Paid For Completed Work***

92.    When employees – including Plaintiff – began noticing the amount of financial, legal, and ethical misconduct that was occurring at the Zephyr Theatre, they brought concerns to Hall and to the Board of Trustees.

93.    Hall and the Board of Trustees ignored their reports.

94.    In retaliation of the employees' reporting such misconduct, the Board responded by claiming to indefinitely "furlough" Plaintiff and numerous other employees. Despite how the Board might have labeled the action, it was not a furlough. Instead, an indefinite furlough – with no guarantee of continued employment – is an effective termination.

95.    Plaintiff and other employees were not given paychecks which were owed for their final periods of work at the time their employment was terminated, and have still not received such payments.

96.    In addition, on or about October 14, 2022, Plaintiff was given five separate checks:

- #1000: $1,511.52 (Reimbursement pursuant to Expense Report dated September 30, 2022);

- #1001: $342.18 (Reimbursement for remaining balance owed to Mr. MacLeslie under Expense Report dated February 13, 2022);

- #1004: $1,050.00 (Payment owed to Mr. MacLeslie for his technical consulting services for Zephyr activities at Chesterton Academy pursuant to Invoice No. 15792, dated June 30, 2022);

- #1006: $2,034.71 (Payroll check #092244 for the pay period 8/29/2022-9/11/2022); and

- #1007: $2,034.72 (Payroll check #092271 for the pay period 9/12/2022-9/25/2022).

97.     While these checks were given to Plaintiff in October, they were illegally post-dated with the date of December 1, 2022.

98.     After December 1, 2022, Plaintiff attempted to cash these checks.  When doing so, he was informed by Lake Elmo Bank that the Zephyr Theatre and Nicole Bartelt had illegally ordered a "stop payment" on the checks.

99.     Plaintiff has also not been paid an additional $2,034.72 for the pay period 9/26/2022-10/9/2022 (Plaintiff was not given a physical check for this pay period but received the paystub) nor at least $2,609.35 owed for unpaid PTO.

100.    The Zephyr Theatre has also unlawfully used intellectual property which Plaintiff licensed and for which he has not been compensated.  Plaintiff licensed such intellectual property following promises made by the Zephyr Theatre Board and Hall that he would be fairly and justly compensated for his efforts.  Those statements were false, and the Zephyr Theatre has failed to justly compensate Plaintiff.  These actions constitute additional fraudulent misstatements by the Zephyr Theatre, the Board, and Hall.

101.    Due to his agreement, volunteer efforts, and other benefits conferred upon the Zephyr Theatre, Plaintiff reasonably expected his jobs would continue and that he would continue to have economic security.

102.    Plaintiff was terminated without cause or justification and in violation of his agreements with the Zephyr Theatre, which agreements were personally guaranteed by Hall and the Board of Trustees.

***Board of Trustees Threats Against Plaintiff and Defamatory Statements***

103.    Following the termination of Plaintiff, Hall stated that if any of the terminated employees could prove that they could be trusted by Hall they might receive their job back.

104.    In addition, on multiple occasions following the wrongful termination, upon information and belief, one or more Board of Trustee members have threatened that Plaintiff and others should not report on the known misconduct discussed above, and that if they did the Board of Trustees would cause difficulty for Plaintiff in seeking other jobs in the Stillwater area.

105.    Upon information and belief, the Board of Trustees members and Hall have spread deliberately false statements about Plaintiff to third-parties in an attempt to discredit him and ruin his reputation.

106.    For example, members of the Board of Trustees have made statements to the public or to other third-parties stating that Plaintiff holds ill-will or a desire to harm the Zephyr Theatre.

107.    In addition, members of the Board of Trustees have made statements to the public or to other third-parties that Plaintiff has not complied with his employment obligations or has wrongfully withheld documents from the Zephyr Theatre following his wrongful termination.

108.    The statements about Plaintiff were knowingly false.

109.    In addition, multiple Board of Trustee members have stated that they cannot state the truth about what has happened for fear of retribution from Hall.

## <u>COUNT I – CIVIL RICO, 18 U.S.C. § 1964</u>
### Against All Defendants

110.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

111.    The Defendants are individuals or entities participating in an ongoing and continuing enterprise of actual and/or fraudulent inducement to obtain donations and services in furtherance of a scheme to steal money from employees and funnel money to Defendant Hall and her family.

112.    Defendants were or are associated with the enterprise by virtue of their controlling positions.

113.    Defendants directly participated in the conduct of the affairs of the enterprise, including, but not limited to, by unlawfully misleading, lying, and fraudulently soliciting donations and services, withholding money owed to employees when work was completed, and wrongfully using money donated by donors, and other financial improprieties to their unwitting employees.

114.    Defendants participated in the enterprise through a pattern of racketeering activity, which consisted of the knowing and willful commission of more than two racketeering acts.

115.    This racketeering activity included multiple instances of wire, mail, and bank fraud victimizing Plaintiff, who is only one of the employees that fell victim to these activities.

116.    On or about the dates set forth above, in and/or purposely directed at the State and District of Minnesota, and for the purpose of executing a scheme or artifice to defraud,

manipulate, fraudulently solicit donations and services, failure to pay employees, and theft of money previously paid to employees, Defendants did knowingly cause to be transmitted in interstate commerce numerous writings, signals, and sounds with receiving money under deceit through the corporate enterprise.

117.    Defendants accordingly violated 18 U.S.C. § 1962.

118.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962, Plaintiff has suffered damages in an amount to be determined at trial, including treble damages, and is entitled to such damages and any other relief deemed just by the Court.

### COUNT II – FRAUDULENT MISREPRESENTATION
### Against All Defendants

119.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

120.    The Zephyr Theatre, with the guarantee of Hall and the Board of Trustee Defendants, made multiple representations to Plaintiff as detailed above for the specific purpose of inducing Plaintiff to provide services to the Zephyr.

121.    Those representations included, among other things, that the corporation was financially well managed, that Plaintiff would be working in a safe and supporting environment, and that the corporation would follow the best practices for operating a nonprofit.

122.    Even after terminating Plaintiff, Defendants made representations to Plaintiff that they would pay him on a contract basis for continued services to the Zephyr Theatre.

123.    Those representations are false.

124.    Defendants' conduct was done intentionally and knowingly, and with bad faith and malice.

125.    Plaintiff justifiably relied on those false representations.

126.    As a result of those false representations and Plaintiff's reliance on them, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT III – NEGLIGENT MISREPRESENTATION
### Against All Defendants

127.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

128.    The Zephyr Theatre, with the guarantee of Hall and the Board of Trustee Defendants, made multiple representations to Plaintiff as detailed above for the specific purpose of inducing Plaintiff to provide services to the Zephyr.

129.    Those representations included, among other things, that the corporation was financially well managed, that Plaintiff would be working in a safe and supporting environment, and that the corporation would follow the best practices for operating a nonprofit.

130.    Even after terminating Plaintiff, Defendants made representations to Plaintiff that they would pay him on a contract basis for continued services to the Zephyr Theatre.

131.    Those representations are false.

132.    Defendants failed and refused to exercise reasonable care or competence in obtaining or communicating the misrepresentations.

133.    Plaintiff relied on those false representations.

134.    As a result of those false representations and Plaintiff's reliance on them, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT IV – BREACH OF CONTRACT
### Against All Defendants

135.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

136.    As described above, Plaintiff had a contract with the Zephyr Theatre, guaranteed by Hall and the Board of Trustees, which included an expectation of future employment unless cause existed for termination.

137.    As a result of the actions described above, Defendants breached the agreement with Plaintiff.

138.    As a result of such breaches, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT V – BREACH OF FIDUCIARY DUTIES
### Against All Defendants

139.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

140.    As a result of the actions described above, as Directors of the Zephyr Theatre, Defendants Bartelt, Hanke, Anthony, Eder, Harvey, Raleigh, and Sallman breached their fiduciary duties owed to Plaintiff.

141.    As a result of the actions described above, as an Officer of the Zephyr Theatre, Defendant Calyssa Hall breached her fiduciary duties owed to Plaintiff.

142.    As a result of such breaches, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT VI – CONVERSION
### Against The Zephyr Theatre

143.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

144.    As described above, Defendants wrongfully and illegally issued stop payments on checks written to Plaintiff for work that Plaintiff had already performed.

145.    Those payments were rightfully due and in possession of Plaintiff.

146.    Defendants' actions were wrongful acts that interfered with Plaintiff's property rights in such payments.

147.    As a result of the actions described above, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT VII – CIVIL THEFT
### Against The Zephyr Theatre

148.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

149.    As described above, Defendants wrongfully and illegally issued stop payments on checks written to Plaintiff for work that Plaintiff had already performed.

150.    In addition, Defendants have wrongfully withheld funds owed to Plaintiff.

151.    Those payments were rightfully due and in possession of Plaintiff.

152.    Defendants' actions were wrongful and constitute civil theft.

153.     As a result of the actions described above, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT VIII – UNJUST ENRICHMENT
### Against The Zephyr Theatre, Hall

154.     Plaintiff incorporates the preceding paragraphs as if fully stated herein.

155.     As described above, Defendants' actions have caused the Zephyr Theatre and Hall, to be unjustly enriched to the detriment of Plaintiff and other employees.

156.     Defendants received financial benefit from their wrongful actions, with such benefit at Plaintiff's expense.

157.     Under the circumstances, it would be unjust for The Zephyr Theatre and Hall to retain the benefit without commensurate compensation to Plaintiff.

158.     As a result of the actions described above, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT IX – WRONGFUL TERMINATION/RETALIATION
### Against All Defendants

159.     Plaintiff incorporates the preceding paragraphs as if fully stated herein.

160.     Plaintiff reported suspected and proven illegal and otherwise harmful actions being undertaken by Hall and the Zephyr Theatre as detailed above.

161.     Plaintiff's reports were done in good faith and in response to a third-party investigator who was asking employees questions as dictated by the Board of Trustees.

162.    Following Plaintiff's reports, Hall, with the support and direction of the individual Board of Trustee members, took adverse employment actions against Plaintiff, including termination.

163.    Such actions by Defendants constitute retaliation and wrongful termination.

164.    As a result of such wrongful termination and retaliation, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT X – FAILURE TO PAY WAGES PURSUANT TO MINN. STAT. § 181.13
### Against All Defendants

165.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

166.    Employers must pay employees their wages in a timely manner and the Defendants in this case failed to do so with Plaintiff.

167.    Wages may include money owed for unpaid salary, vacation time or other PTO, as well as bonuses, commissions, and other non-salary benefits.  To date, Plaintiff is owed a significant amount of money from unpaid salary, unpaid PTO and other benefits, and reimbursement for expenses.

168.    If the employer does not pay wages within 24 hours of demand, the employer may be liable for a penalty of up to 15 days of additional wages plus costs and attorneys' fees.  Plaintiff has requested the amounts owed to him multiple times without success.

169.    To date, Defendants have denied Plaintiff's multiple requests for payment.

170.    Minnesota law provides for criminal penalties for employers who commit such wage theft, including 20 years imprisonment, a fine of up to $100,000, or both, if the wage theft exceeds $35,000.

171.    Defendants have admitted that they owe employees more than $95,000 in unpaid wages.

172.    As a result, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT XI – CIVIL CONSPIRACY
### Against All Defendants

173.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

174.    The allegations above establish that the Defendants – two or more people – worked together to accomplish an unlawful purpose or a lawful act by unlawful means, including, but not limited to: wrongfully withholding payments owed to Plaintiff for the work he performed in violation of state and federal wage and labor statutes, and furthering an illegal racketeering enterprise.

175.    As a result, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court.

## COUNT XII – DEFAMATION AND DEFAMATION PER SE
### Against All Defendants

176.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

177.    Defendants have made statements to the public or to other third-parties stating that Plaintiff holds ill-will or a desire to harm the Zephyr Theatre.

178.    In addition, Defendants have made statements to the public or to other third-parties that Plaintiff has not complied with his employment obligations or has wrongfully withheld documents from the Zephyr Theatre following his wrongful termination.

179.    These statements are of the kind that they have the tendency to injure one's reputation.

180.    These statements about Plaintiff were statements that Defendants knew or should have known to be false.

181.    As a result, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to such damages and any other relief deemed just by the Court, including, but not limited to, damages for the harm to Plaintiff's reputation and standing in the community, mental distress, humiliation, and embarrassment

## COUNT XIII – VIOLATIONS OF MINN. STAT. § 317A
### Against All Defendants

182.    Plaintiff incorporates the preceding paragraphs as if fully stated herein.

183.    Plaintiff has authority to bring this claim pursuant to Minn. Stat. § 8.31, Subd. 3a.

184.    The Zephyr Theatre violated Minn. Stat. § 317A.201 by virtue of allowing the business and affairs of the corporation to be managed by an individual who was not the Board of Trustees.

185.    The Board of Trustees each violated Minn. Stat. § 317A.251, Subd. 1 because they each failed to discharge their duties in good faith and in a manner which could

reasonably be believed to be in the best interests of the corporation, and failed to act with the care of an ordinarily prudent person in like circumstances.

186.    The Zephyr Theatre and the Board of Trustees violated Minn. Stat. § 317A.305, Subd. 3 by, among other things, failing to ensure that the Board of Trustees kept accurate financial records for the corporation and violating duties owed to employees and donors by the Board of Trustees.

187.    Defendant Calyssa Hall violated Minn. Stat. § 317A.361 by failing to discharge her duties as an Officer in good faith, in a manner which could reasonably be believed to be in the best interests of the corporation, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

188.    The actions of the Board of Trustees, the individual Board of Trustee members, and Calyssa Hall, intentionally and/or effectively led to the operation of the corporation for the benefit of the Hall family and at the expense of the employees, volunteers, and donors of the organization.  This included, but is not limited to, the actions of intentionally soliciting donations while knowing that the corporation was not legally allowed to do so and intentionally using donated funds for wrongful purposes.

189.    As a result of the above-named violations of Minn. Stat. § 317A, Plaintiff has been damaged in an amount to be determined at trial, and is entitled to such damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and other equitable relief as determined by the Court.

## JURY TRIAL DEMANDED

190.    Plaintiff demands a jury trial as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands and prays for judgment in his favor and against Defendants as follows:

1.      Finding in Plaintiff's favor and against Defendants on all claims;

2.      Damages in an amount to be proven at trial, but no less than $100,000;

3.      Treble damages for Count I;

4.      Ordering all Defendants to divest themselves of any interest, direct or indirect, in the enterprise;

5.      Imposing reasonable restrictions on the future activities of Defendants, including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise engaged in and prohibiting Defendants from serving on nonprofit Boards of Trustees/Boards of Directors;

6.      Ordering dissolution of the enterprise making do provision for the rights of innocent persons;

7.      Awarding Plaintiff all costs and attorneys' fees associated with this matter;

8.      Awarding Plaintiff all costs and attorneys' fees in connection with investigating this matter;

9.      Equitable relief as permitted by Minn. Stat. § 317A;

10.     Pre-judgment and post-judgment interest allowable by law; and

11.     Such other and further relief as the Court may deem to be just and equitable under the circumstances.

Dated: January 5, 2023                    WINTHROP & WEINSTINE, P.A.

                                          By: *s/ Devon C. Holstad*
                                          Devon C. Holstad (#0398107)
                                          225 South Sixth Street, Suite 3500
                                          Minneapolis, Minnesota 55402
                                          Telephone: (612) 604-6400
                                          E-Mail: dholstad@winthrop.com

                                          ***Attorneys for Plaintiff***

25458519v1